UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
YULIYA SHEKH,                                                    Civil Action No.:


                              Plaintiff,                        **COMPLAINT**

                    v.

MINHAS CONSTRUCTION CORP.,                                       PLAINTIFF DEMANDS A
and ALEKSANDR A. GAN a/k/a ALEX GAN,                            TRIAL BY JURY


                              Defendants.
---------------------------------------------------------------X

Plaintiff Yuliya Shekh ("Plaintiff" or "Shekh"), by her attorneys, Akin Law Group, PLLC, as and

for her Complaint against the Defendant Minhas Construction Corp. ("Minhas") and Aleksandr

A. Gan a/k/a Alex Gan ("Alex Gan") (collectively "Defendants"), upon information and belief,

alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against the Defendants pursuant to the Civil Rights Act of 1964, 42

   U.S.C. §§ 2000e *et seq*. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law

   §290, *et seq*. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §

   8-101 *et seq*. ("NYCHRL"), seeking damages to redress the injuries Plaintiff has suffered as the

   result of being discriminated against on the basis of her sex/gender, subjected to *quid pro quo*

   sexual harassment, hostile work environment and retaliation.

2. Plaintiff also complains pursuant to the New York Labor Law § 198 *et seq*. ("NYLL"), seeking

   to recover underpayments, reasonable attorney's fees, prejudgment interest and liquidated

   damages for being paid at a substantially lower rate than the rate at which male employees at

Minhas were paid for the equal work.

## JURISDICTION AND VENUE

4.  This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the causes of actions brought under Title VII and supplemental jurisdiction over the claims under NYSHRL and NYCHRL, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.  Venue is appropriate under 28 U.S.C. § 1391 (b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district; Minhas regularly conducts business in this district; the Defendant Alex Gan resides in this district; and the Defendants are subject to personal jurisdiction in this district.

6.  On November 20, 2020, Plaintiff filed a Charge of Discrimination with the EEOC, Charge Number 520-2021-00690.

7.  On March 26, 2021, the EEOC issued Plaintiff a Notice of Right to Sue with respect to the aforementioned Charge of Discrimination, attached herein as Exhibit A.

8.  Plaintiff has exhausted her administrative remedies and files this Complaint within 90 days of the EEOC's issuance of her Notice of Right to Sue, satisfying all procedural prerequisites for bringing this action.

## PARTIES

9.  At all times herein relevant, Plaintiff was and is a resident of Kings County, in the State of New York.

10. Shekh is a woman who is protected from the unlawful employment discriminatory practices

under Title VII, NYSHRL and NYCHRL and NYLL.

11. Minhas was and is a domestic business corporation duly organized and existing under and by virtues of the laws of the State of New York.

12. Minhas was and is a domestic business corporation authorized to conduct business in the State of New York.

13. Until in or around 2017, Minhas maintained its principal place of business at 648 Bay Street, Staten Island, New York 10304-3811.

14. From 2017, Minhas has maintained its principal place of business at 254 36th Street B336, Unit 55, Brooklyn, New York 11232.

15. Minhas provides construction services, and primary operates in the commercial and office building, new construction business/industry.

16. Minhas provides services such as engineering, general contracting, and construction management.

17. From 2016 to May 2019, Minhas was Plaintiff's employer within the meaning of Title VII, NYSHRL, NYCHRL and NYLL.

18. At all times herein relevant, Alex Gan was and is a resident of Kings County, in the State of New York.

19. At all times herein relevant, Alex Gan was and is an employee of Minhas.

20. In 2016, Alex Gan was employed at Minhas as an estimator.

21. From in or around 2017, Alex Gan has been employed at Minhas as the VP of Operations.

22. During the entirety of Plaintiff's employment at Minhas, Alex Gan was Plaintiff's supervisor and/or manager.

23. During the entirety of Plaintiff's employment at Minhas, Alex Gan had the right to hire, fire, promote, demote, reward and sanction Plaintiff.

24. During the entirety of Plaintiff's employment at Minhas, Alex Gan controlled aspects of Plaintiff's compensation, terms, conditions, privileges of employment.

25. Waqas Mahmood was and is CEO and President of Minhas.

26. During the entirety of Plaintiff's employment at Minhas, Waqas Mahmood was Plaintiff supervisor and/or manager.

27. During the entirety of Plaintiff's employment at Minhas, Waqas Mahmood had the right to hire, fire, promote, demote, reward and sanction Plaintiff.

28. During the entirety of Plaintiff's employment at Minhas, Waqas Mahmood controlled aspects of Plaintiff's compensation, terms, conditions, privileges of employment.

## **FACTS**

29. Plaintiff is a woman from Belarus who immigrated to the United States in 2015.

30. Plaintiff has bachelor's degree in engineering.

31. In or around April 2016, Plaintiff was interviewed and hired by Alex Gan, the estimator at Minhas at that time, for the position of an assistant estimator.

32. As an assistant estimator, Plaintiff was to identify and analyze labor, material, time requirements by studying proposals, blueprints, specifications and compute the cost.

33. From 2016 to May 2019, on a daily basis, Plaintiff worked under Alex Gan's supervision.

34. From April 2016 to 2017, Plaintiff worked at Minhas, located at 648 Bay Street, Staten Island, New York 10304-3811.

35. From 2017 to May 2019, Plaintiff worked at Minhas, located at 254 36th Street, B336, Unit 55, Brooklyn, New York 11232.

36. At the time of her termination, Plaintiff was paid a salary of $961.54 per week, and was entitled to various benefits, such as: bonuses, 401K, *etc*.

37. During the entirety of her employment with Minhas, Plaintiff was a stellar employee.

38. During the entirety of her employment with Minhas, Plaintiff satisfactory performed her duties and responsibilities.

39. As the result of her outstanding work performance, Plaintiff was promoted from the assistant estimator to the engineer/estimator position at Minhas.

40. As the result of Plaintiff's satisfactory work performance, on December 31, 2018, Waqas Mahmood informed Plaintiff that she would be receiving an increase of $5,000 to her annual salary and a year-end bonus of $2,000.

41. On December 30, 2019, in appreciation of Plaintiff's "excellent performance and the contribution [she] made for working at Minhas" Waqas Mahmood informed Plaintiff that she would receive $2,000 bonus and $5,000 annual raise.

42. Despite her outstanding work performance, Minhas, through its agents and employees, subjected Plaintiff to the unlawful *quid pro quo* sexual harassment, hostile work environment, sex/gender based discrimination and retaliation.

43. The sexual harassment Plaintiff was subjected to at Minhas was ongoing, and continued to be unremedied and permitted by Minhas to continue until Plaintiff's termination.

44. From April 2016 to May 2020, on a daily and pervasive basis, Alex Gan, Plaintiff's immediate supervisor, demanded sexual acts from Plaintiff, subjected her to highly

inappropriate sexual and lewd comments and remarks and forcible touches. Alex Gan then used Plaintiff's reaction to his unlawful conduct as the basis for Minhas' decisions affecting the terms, conditions and privileges of Plaintiff's employment.

45. From the onset of Plaintiff's employment until her termination, Alex Gan made clear to Shekh that the retention of her employment at Minhas depended on the acceptance or rejection of Alex Gan's sexual favors.

46. In or around the first week of Plaintiff's employment at Minhas, Shekh walked into Alex Gan's office to inquire about a work-related assignment. Alex Gan stood up from his desk, walked towards Plaintiff, and forcibly kissed her in her lips.

47. Shekh was appalled by Alex Gan's sexually inappropriate behavior, and informed Alex Gan that she was not interested in any relationship with him, other than work-related.

48. Alex Gan ignored Plaintiff's objections. He came up to Plaintiff, touched her leg, and told her that he liked her, and that he was attracted to her. Plaintiff continued to reject Alex Gan's sexual advances to no avail.

49. Since then, any time Plaintiff refused to succumb to Alex Gan's demands for sexual favors, he refused to give her assignments or assigned her tasks with little to no guidance.

50. When Shekh refused Alex Gan's requests for sexual favors, he called her "Stupid", screamed at her, threw calculator at her and so on.

51. From the onset of her employment wtih Minhas, until in or around 2019, Plaintiff spoke very little English, and communicated with Alex Gan mostly in Russian. Plaintiff was afraid that if she refused to succumb to Alex Gan's sexually inappropriate conduct, she would be fired, and would not be able to find another employment in the field of construction or engineering.

52. In or around 2016, when Plaintiff and Alex Gan were at the construction site, Alex Gan continued to demand sexual favors from Plaintiff, requesting her to accompany him to a hotel.

53. In fear to lose her job, Plaintiff surrendered Alex Gan's unwelcome sexual encounters.

54. Retention of Plaintiff's employment was the tangible job benefit Shekh received for succumbing to Alex Gan's sexual demands.

55. On a regular and pervasive basis, Alex Gan inappropriately touched Plaintiff at workplace by placing his hand under her dress and touching her genitalia area. Plaintiff felt extremely uncomfortable and moved away each time.

56. On a regular basis, Plaintiff advised Alex Gan that she felt extremely uncomfortable when he touched her at workplace, especially when other Minhas' employees could walk in at any minute and witness his sexually inappropriate behavior towards her. Alex Gan ignored Plaintiff's concerns.

57. In or around April 2019, as Shekh and Alex Gan were sitting next to each other while working on a project, Alex Gan placed his hands under Shekh's dress. He then twirled her dress and pulled towards himself. Shekh immediately got up, expressing her outrage and dissatisfaction. Shekh inquired "are we going to work? or you would rather do anything but work?" Alex Gan ignored Plaintiff's frustration, complimenting her "beautiful-beautiful eyes".

58. In or around 2019, having taken English classes and having gained some experience in the field of engineering and construction, Plaintiff felt more comfortable expressing her rejections to Alex Gan.

59. Plaintiff started distancing herself from Alex Gan, and anytime when he demanded sexual favors from her, she pretended that she had a headache, felt sick, or had a family issue that required immediate attention.

60. In response to Plaintiff's rejections, Alex Gan started to gradually demote Plaintiff's position and force her out of the company.

61. On or about November 8, 2019, Alex Gan called Plaintiff into his office and requested her resignation from Minhas. Alex Gan informed Plaintiff that his wife was in the possession of a sex tape (of Alex Gan and Plaintiff) which she threatened to release if Plaintiff's employment with Minhas was not terminated.

62. Plaintiff complained to Alex Gan that he had no permission to record her without her consent, and refused to resign, unless Minhas, through its agents and employees, decided to officially terminate her employment.

63. Alex Gan continued to threaten Plaintiff with the release of the sex tape to no avail.

64. On November 14, 2019, in response to Plaintiff's rejections of his sexual advances, Alex Gan reiterated to Plaintiff that unless her employment with Minhas was terminated, the sex tape would be released.

65. On November 14, 2019, in response to Plaintiff's rejections of his sexual advances, Alex Gan stopped giving Plaintiff assignments and started socially isolating her at workplace.

66. From November 2019 to November 2020, on a regular and pervasive basis, Alex Gan texted Plaintiff, even though she repeatedly told him to stop.

67. On November 18, 2019, Alex Gan complimented Plaintiff on her appearance, and forcibly pulled her towards himself, forcibly kissing her. In response to Plaintiff's rejections, Alex Gan

gave Shekh materially worse, insignificant assignments. When Shekh refused to start looking for another job, Alex Gan raised his voice.

68. On November 20, 2019, Alex Gan continued pressuring Plaintiff to leave the job and encouraged her to start working on her resume.

69. On December 6, 2019, Alex Gan wrote a letter to Shekh, indicating, among others, "**without you as the woman, it makes me feel like I am crawling up the walls…I ask you as a man, being madly in love, stay with me today after work. There will be no-one at 5p.m. here**… I simply cannot leave without you!!!!! Without your smell, taste, warmth. I cannot tolerate this (referring to sex) over a month. Dear, please help me out! If you can!!!!!!" Plaintiff declined Alex Gan's request for sexual favors.

70. On December 8, 2019, Alex Gan sent numerous text messages to Shekh, which she ignored. Plaintiff repeatedly asked Alex Gan to stop texting her. In response to Plaintiff's rejections, Alex Gan texted, among others, "one must pay for everything in life", further intimidating and threatening Plaintiff.

71. On December 9, 2019, Shekh came to the office and told Alex Gan that she did not wish to receive any more text messages from him, and that she would be switching her phone off. In response to Plaintiff's rejections, Alex Gan continued to threaten Plaintiff with the release of the sex tape. When Plaintiff encouraged Alex Gan to delete the video, he started shaking from anger and pushed Plaintiff. When Plaintiff informed Alex Gan that she would not have intimate relationship with him, Alex Gan started begging Plaintiff to stay in his life "as a woman". At 9.30 p.m. Alex Gan called Plaintiff from the office number at least three times, which she ignored.

72. In or around December 2019, Alex Gan called Plaintiff into a 1.4-hour meeting, pretending to talk about the specifications Shekh was assigned to do. He told her to close the door, sit down, and inquired if he could start with a compliment. Shekh suggested to discuss work instead. Alex Gan continued making unwelcome comments sexual in nature towards Shekh *e.g.* "your eyes are beautiful!", "your hair is amazing!", "you look fantastic!", "when you sat down I looked under your skirt, now I look at you - I want you very much!"

73. Alex Gan inquired from Plaintiff what kind of relationship he could expect from Plaintiff moving forward. Plaintiff responded that they could have friendly, but not intimate relationship. Alex Gan responded that friendly relationship would not work. He said that he wanted intimate relationship with Shekh, wanted to be in bed with her, touch her, love her and said that he wanted Shekh and that as a woman she was driving him crazy. The meeting was over when Shekh left in tears.

74. In December 2019, Alex Gan called Plaintiff into another 1-hour meeting, during which he criticized her for not wearing the watch he had gifted her. He further told Plaintiff that he was not sure who was the bigger whore: him or her, and said that he **used her as a whore at the expense of the job.** He told her to pack her things and leave and find another job. When Alex Gan inquired from Plaintiff what she thought would be the best version of their relationship moving forward - Plaintiff said that she had to go back to work. During this meeting Alex Gan said that he had "a lot of women on the job".

75. On December 10, 2020, Alex Gan informed Plaintiff that he cannot work with her any longer, and reiterated that her employment with Minhas would soon be terminated. Alex Gan then forcibly hugged Plaintiff. Alex Gan then started to look for a pre-textual reason to facilitate

Plaintiff's termination. By just a way of example, he falsely accused Plaintiff in taking weeks to complete a project, even though he regularly kept Plaintiff in his office for hours in an attempt to sexually harass her, thus preventing her from completing her work assignments.

76. Later that day, Waqas Mahmood requested Plaintiff to forward him a copy of Plaintiff's resume.

77. On December 11, 2019, throughout the day, on multiple occasions, Alex Gan demanded sexual favors from Plaintiff, which she refused. Later that day, as Plaintiff was standing next to Alex Gan, he placed his hand under her dress and touched her bottoms. He then asked Plaintiff to stay in the office (to have sex), which she refused.

78. On December 11, 2019, after Plaintiff left work, Alex Gan continually called Plaintiff, demanding to know where she was, and requesting her to meet. Plaintiff ignored Alex Gan's phone calls, and declined his request for a meeting. When Alex Gan informed Plaintiff that he was in her neighborhood because he needed to talk, she reluctantly agreed to meet him in a public place.

79. Alex Gan drove to where Plaintiff was located, and requested her to sit in his car. In fear of retaliation, Plaintiff agreed. While in the car, Alex Gan repeatedly requested Plaintiff for sex, saying, "Yulichka! Rodnaya ("dear"), please forgive me everything, I understand, but at least sometimes, at least once-twice per week (referring to sex)". When Alex Gan inquired from Plaintiff whether she heard what he was saying, she said, "I have classes. Please let's go!" Alex Gan then **confided in Plaintiff that he wanted to rape her in the office earlier that day**. After repeated rejections, Alex Gan informed Plaintiff that he would need to relay to Waqas Mahmood about their "relationship", and that she would need to look for another job.

80. Alex Gan then started grabbing Plaintiff by the jacket, tearing up her dress, touching her legs. When Plaintiff attempted to exit the car, Alex Gan grabbed her by the sleeve, demanding not to leave. When Plaintiff eventually got out of the car, Alex Gan started yelling at Plaintiff, "Come back!", "Come back!", "Come back!", "Come back!". Thereafter, Alex Gan sent multiple text messages to Plaintiff which she ignored.

81. On December 12, 2021, Alex Gan called Plaintiff into 40-minute meeting, during which he asked to hug Plaintiff one last time, and offered Plaintiff two options: to forward him her resume or to work from home, as long as nobody knew about it. Shekh refused to do anything behind anyone's back, and requested an official email requiring her to work from home or an official termination letter. When Shekh inquired why her employment was to be terminated and whether it was due to her work performance, Alex Gan responded that **as the woman and man they could no longer work together.** Alex Gan told Shekh that because of their past relationship, she would not work at Minhas anyway. Plaintiff encouraged Alex Gan to do what he deemed necessary within the limits of the law.

82. When Plaintiff returned to her desk, Alex Gan stood behind her back and whispered that he gave her time until February 1 to leave the job. When Plaintiff refused, Alex Gan said "prigreli", referring to a Russian proverb about a snake, meaning that one helps another, but instead of gratefulness, gets stabbed in the back.

83. In response to Plaintiff's rejections, Alex Gan falsely criticized Plaintiff for failing to send an email to a program director at NPS, even though Plaintiff had never been instructed to send such email in the first place. Nevertheless, Plaintiff complied with Alex Gan's request and sent the email as requested.

84. In or around December 2019, Alex Gan had an in-person conversation with Shekh, during which Alex Gan would not let Shekh work, even though she told him she had to complete a draft for Waqas Mahmood, the CEO. Alex Gan asked Shekh to stay, and begged her not to leave. When Shekh said that she had to work, Alex Gan inquired if she was deaf. The meeting was over when Shekh got up and left.

85. In or around December 2019, Alex Gan telephoned Shekh, and inquired whether she was alone in the office and whether she could talk. He inquired how Plaintiff was doing. When Plaintiff responded that everything went well at work, he responded that he was not interested in work. Alex Gan then inquired if Shekh would come downstairs if he drove by - Shekh refused.

86. In or around December 2019, Alex Gan telephoned Shekh and made a series of unwelcome comments sexual in nature *e.g.* "you are very sexy", "you drive me crazy", "when I see you I go nuts", "I like you so much", "I love you so much", "I miss you so much", "my kitten". Alex Gan then told Shekh that there was a bid on the 16th and inquired if he could take her out somewhere after that. Shekh refused and rushed to hang up the phone.

87. In or around December 2019, Alex Gan continued making unwelcome comments sexual in nature towards Shekh in the office *e.g.* "I want you to be beautiful, sexy and wanted!", "I cannot live without you", "I feel so much emptiness without you", "I want to gift something to you. What would you like?" Plaintiff ignored Alex Gan's comments, and continued talking about work and said that she needed to estimate the territory. Alex Gan continued, "give me a chance", "I beg you", "Don't be quiet", "please come closer". Plaintiff walked away without being able to complete the assignment.

88. In or around December 2019 or January 2020, Alex Gan had an in-person 1.5-hour conversation with Shekh, during which he said that Shekh should leave the job as soon as possible and that he does not want to receive any work from her anymore. He further said that he had been helping her out, and that she did not appreciate his help, and that Shekh **paid him back with her vagina**, and laid under him. Alex Gan inquired from Shekh why she spread her legs in front of him, Shekh responded that he told her to do so. Alex Gan then said that **she worked while he fucked her, and that once he stopped fucking her, she stopped working.** Alex Gan encouraged Plaintiff to look for another job. During this conversation Alex Gan criticized Shekh for a poor work performance. When Alex Gan encouraged Shekh to look for another job, however, he expressed no doubt that she would be able to find another job because she is very talented. During this conversation Alex Gan called Plaintiff a whore on at least two occasions.

89. On December 17, 2019, Alex Gan called Plaintiff into his office, and requested her to dress up nicer, so to appeal to other employees at Minhas. Plaintiff objected, saying she was dressing according to the weather conditions.

90. Throughout the day, Alex Gan forcibly hugged Plaintiff; she immediately moved away. At one point, as Plaintiff was sitting next to Alex Gan, working on a project, he forcibly kissed her in her lips; Plaintiff immediately moved away. Alex Gan requested Plaintiff to stay in the office after the business hours (to have sex), which she refused. After Plaintiff left work, Alex Gan called Plaintiff from the office number, which she ignored.

91. On December 18, 2019, in further retaliation against Plaintiff, Alex Gan excluded Plaintiff from the contract related to the work performed at the construction site in the New York county.

92. On December 19, 2019, Alex Gan forcibly kissed Plaintiff.

93. On December 27, 2019, December 28, 2019 and December 29, 2019, Alex Gan continually demanded from Plaintiff to come to his house (to have sex), which she refused.

94. On December 30, 2019, Alex Gan continued to demand from Plaintiff to come to his house to have sex, which she refused. Alex Gan conditioned Plaintiff's continued employment at Minhas upon having a sexual relationship with him. Specifically, Alex Gan told Plaintiff that in order for her to be able to work the first day in 2020, she would need to sleep with him.

95. In addition, among others, Alex Gan encouraged Plaintiff to appreciate everything he has done for her; told her that she spoke English only thanks to him; and alleged that he had been covering her in front of Waqas Mahmood. Alex Gan then threatened that if Plaintiff would not come to his house - she would regret.

96. On December 31, 2019, Alex Gan called Plaintiff and demanded her to come to his house When Plaintiff refused, Alex Gan made inappropriate comments towards her *e.g.* "whore", "ungrateful animal", "village fool". Alex Gan further threatened Plaintiff that **if she went to the police, she would have to "collect [her] belongings and leave the United States"**

97. The same day, Alex Gan demanded to know where Plaintiff was physically located. In fear of retaliation, Plaintiff agreed to meet in a public place. Alex Gan demanded from Shekh to sit in his car, which she refused.

98. From on or about January 2, 2020 to January 15, 2020, Alex Gan told Plaintiff that although he could order a service (referring to a prostitute), he wanted to sleep with her.

99. On January 16, 2020, Plaintiff stayed late in the office to catch up on her work. Alex Gan started demanding sex from Plaintiff, saying, **"I want to fuck you!", "Why don't you spread your legs for me?"** Plaintiff was unable to tolerate humiliation any further, and left the office without being able to complete her work.

100. In response to Plaintiff's rejections, Alex Gan continued to falsely accuse Plaintiff in a poor work performance.

101. On February 4, 2020, Alex Gan invited Shekh for dinner, which she declined.

102. Throughout the day, Alex Gan inappropriately touched Plaintiff, and requested intimate relationship with her. In response to Plaintiff's rejections, Alex Gan threatened Plaintiff with the release of the sex tape, falsely accused her in a poor work performance, and threatened that she would regret. When Plaintiff was leaving the office, Alex Gan requested her to stay late (to have sex), which she refused.

103. In 2019, on a regular and pervasive basis, Alex Gan texted Plaintiff *e.g.* "miss you", "I love you", "let's meet", "I ask you for a meeting", "allocate few hours for me…please", "Yulenka!!!! You are my air and my light", "you look fabulous!".

104. In response, Plaintiff texted *e.g.* "sorry I cannot text", "anything urgent?", "Sasha I am sorry, but is there need to text me 100 times? You promised not to text", "don't text me", "I am not going to respond to you", "stop texting me", "no", "no Sasha sorry", "sorry it is impossible (to meet)", "Sasha it is impossible (to call)".

105. On a regular basis, Alex Gan prepared handwritten notes and letters for Shekh making unwelcome comments sexual in nature.

106. In retaliation against Plaintiff for rejecting Alex Gan's sexual advances, Minhas, through its agents and employees, started recruiting a new personnel to facilitate Plaintiff's replacement.

107. In or around April 2018, Minhas, through its agents and employees, informed Plaintiff that it would be hiring an overseas company in Pakistan, and that Plaintiff would be promoted to a supervisor position.

108. In or around February 2020, however, a new employee, named Tatiana, was hired as an estimator, who was promoted to said supervisor position.

109. Minhas, through its agents and employees, passed over Plaintiff for promotion, because she rejected Alex Gan's sexual advances.

110. In further retaliation against Plaintiff for rejecting his sexual advances, Alex Gan stripped Plaintiff off her duties.

111. By way of example, previously, Plaintiff received the contract documents Minhas received from the local government, reviewed them, collected job description, placed information in Excel, collected volume of work, determined what materials were required and what specific work needed to be completed, what type of subcontractors were required; compared the proposals, estimated the price, prepared change orders, calculated; appeared at job sites; made sure all materials were received from supplier, compiled materials according to specifications, made sure all work was done, completed time sheets, supervised employees.

112. After Plaintiff repeatedly rejected Alex Gan's sexual advances, however, Plaintiff was told to perform some insignificant duties *e.g.* pick up phone calls and sort out paperwork.

113. Alex Gan did not even let Plaintiff receive proposals from the sub-contractors, which according to Tatiana, Plaintiff was more than qualified to do, and which Plaintiff had been previously allowed to do.

114. By stripping Plaintiff off her duties, and assigning her materially worse assignments, Minhas, through its agents and employees, created a setback in Plaintiff's career.

115. Alex Gan also disallowed Plaintiff to use PlanSwift - a software for construction, forcing Plaintiff to use a pencil and a liner, which required painstakingly much longer time.

116. Other Minhas' employees were allowed to use the program on a regular basis.

117. When Plaintiff inquired from Tatiana if she could have access to the program as well, Tatiana responded that she would love to share the program, but that "Minhas' policy prevailed".

118. Minhas, through its agents and employees, did not allow other employees to share PlanSwift because Plaintiff rejected Alex Gan's sexual advances.

119. By stripping Plaintiff off her duties and demoting her, the Defendants took a tangible employment action against Plaintiff as part of the sexual harassment.

120. In or around March 2020, due to Covid-19, Plaintiff and other Minhas' employees started working remotely.

121. On or about April 4, 2020, Plaintiff was notified that her position was furloughed until May 4, 2020, due to "the current pandemic situation [that] impacted [Minhas].

122. In the meantime, Minhas, through its agents and employees, actively recruited new estimators on ZipRecruiter, and hired a team of estimators who worked remotely from Pakistan.

123.Preserving the financial stability of Minhas was just a pre-text to cover up the Defendants' discriminatory practices against Plaintiff.

124.The true motivation behind Minhas' furlough of Plaintiff was her refusal to succumb to Alex Gan's sexually harassing behavior.

125.On or about April 4, 2020, in further retaliation against Plaintiff, and to facilitate her termination from Minhas, Alex Gan falsely accused Plaintiff is a less than satisfactory work performance, to which she provided a detailed rebuttal.

126.In or around April 2020, Alex Gan continued sending text messages to Plaintiff, which she repeatedly ignored.

127.On May 3, 2020, Plaintiff received an email enclosing "Termination and Severance Agreement", executed by Waqas Mahmood. In exchange for one month gross salary severance pay, Minhas, through its agents and employees, offered Plaintiff to release her claims of sexual harassment. Plaintiff refused to sign the agreement.

128.Minhas, through its agents and employees, terminated Plaintiff in retaliation against her for opposing Alex Gan's sexually inappropriate behavior and in response to her repeated rejections of his unlawful conduct.

129. Following Plaintiff's termination from Minhas, her position remained open and Minhas continued seeking applicants to fill in Plaintiff's position.

130.While relying on "financial problems" as a pre-textual reason for Plaintiff's termination, Minhas re-hired one of its furloughed employees, named Vijay.

131.In or around August 2020, three months after Plaintiff's employment with Minhas was terminated, Alex Gan showed up in Plaintiff's neighborhood, and suggested to talk, which

Plaintiff refused. Alex Gan falsely advised Plaintiff that her termination had nothing to do with retaliation against her for rejecting his sexual advances.

132. Until November 16, 2020, Alex Gan continued sending text messages to Plaintiff, which she repeatedly ignored.

133. Minhas failed to exercise reasonable care to prevent and correct promptly Alex Gan's sexually harassing behavior.

134. Minhas provided no preventative or corrective opportunities for Shekh to avoid the sexual harassment she was subjected to at Minhas.

135. During the entirety of Plaintiff's employment, Minhas conducted no training on how to prevent the sexual harassment/discrimination at workplace, how to and who to report discrimination/sexual harassment.

136. Minhas' Company Rules & Regulations provided no reasonable avenue on how to complain about the sexual harassment/discrimination.

137. Instead of conducting training on how to prevent sexual harassment at workplace, on a regular basis, Alex Gan conducted meetings with Minhas' female employees, during which he explained that all sexual harassment cases are frivolous.

138. During Plaintiff's employment with Minhas, there was no HR.

139. In fear of retaliation, Plaintiff was afraid to voice her concerns about the sexual harassment to Waqas Mahmood, because Waqas Mahmood and Alex Gan were very close friends.

140. Upon information and belief, other female employees were also sexually harassed by Alex Gan at Minhas.

141. On November 20, 2019, Alex Gan was hugging Vadesha, and was whispering things into her ear.

142. On December 18, 2019, Alex Gan put his hand in Vadesha's décolleté.

143. On December 30, 2019, Alex Gan called Vadesha immediately after Plaintiff denied his request to come to his house to have sex. Vadesha collected her belongings, and left the office. Later Alex Gan admitted to Plaintiff that Vadesha was indeed at his house that day.

144. Upon information and belief, Arati stopped wearing dresses because of Alex Gan's sexually harassing behavior. At some point, Alex Gan requested that Arati started wearing dresses again.

145. Within months since Plaintiff commenced her employment at Minhas, she witnessed Jennifer, assistant project manager, saying to Nicole, Minhas employee, "The boss (referring to Alex Gan) likes the new girl (referring to Shekh)! She is next!"

146. On another occasion, at the beginning of Plaintiff's employment at Minhas, Plaintiff witnessed Jennifer running out of Alex Gan's office, saying to Shekh, "Good luck to you!"

147. In further retaliation against Plaintiff, the Defendants interfered with Plaintiff's subsequent employment following Plaintiff's employment at Minhas.

148. On October 30, 2020, Plaintiff was interviewed for the position at Sharan Builders Inc. The same day, Plaintiff received a missed call from Irshad Rajpoot, Waqas Mahmood's father.

149. In or around November 2020, Plaintiff mitigated her lost wages by commencing her employment with Sharan Builders Inc., where she earned $826.91 per week, comparing to $961.54 per week she earned at Minhas.

150. On March 12, 2021, after Plaintiff filed a charge of discrimination with the EEOC against Minhas, Plaintiff was terminated from Sharan Builders Inc with a very good reference on the basis that the company did not want to bid anymore. A week later, however, her position was posted on ZipRecruiter.

151. Minhas and Sharan Builders Inc have previously worked together on the same project, and their owners are familiar with each other.

152. Upon information and belief, Minhas, through its agents and employees, interfered with Plaintiff's employment at Sharan Builders Inc in further retaliation against her for filing a charge with the EEOC and otherwise opposing the Defendants' discriminatory practices.

153. In addition, during her employment with Minhas, Plaintiff was paid a wage at a rate less than the rate at which male employee was paid for equal work.

154. By way of example, Plaintiff performed the same duties and responsibilities as Michael Pettito, male employee, including, but not limited to the following: scheduling; supervising Minhas' employees to make sure installation of materials is done according to contracts; providing progress records to general contractors and Minhas, the sub-contractor; providing system progress pictures; filling out quality daily reports; inspecting materials reports; maintaining point inspection reports; scheduling and receiving deliveries in the warehouse; inspecting received materials; keeping log reflecting installation and providing the same to Waqas Mahmood and Alex Gan upon their request; scheduling and participating in meetings with the agency *e.g.* MTA and general contractors to present the complete work, sign off on the form; investigating materials were required; providing details to suppliers; ordering materials; providing daily sign-in sheets from the job site to the accounting department.

155. Plaintiff possessed skills and qualifications necessary for the performance of the above-referenced duties and responsibilities equal to Minhas' male employees *e.g.* Michael Pettito.

156. Plaintiff possessed education, training and experience necessary for the performance of the above-referenced duties and responsibilities equal to Minhas' male employees *e.g.* Michael Pettito.

157. Plaintiff had more seniority with Minhas than Michael Pettito.

158. Although Plaintiff performed the same duties and responsibilities as Michael Pettito, and possessed equal skills and qualifications necessary for the performance of the above-referenced duties and responsibilities, she was paid substantially less than Michael Pettito for equal work.

159. Plaintiff was paid less than Michael Pettito for equal work because of her sex/gender.

160. Plaintiff's position at Minhas was intolerable as a result of the discrimination by the Defendants to which she was subjected, and no reasonable person in Plaintiff's position could be expected to continue working under those conditions.

161. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

162. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized and embarrassed.

163. As a result of the Defendants' discriminatory and intolerable treatment, Plaintiff suffered severe emotional distress.

164. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary

losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

165. As a result of the acts and conduct complained of herein, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

166. Because the Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount, which exceeds the jurisdictional limits of all lower Courts.

**FIRST CLAIM FOR RELIEF**
**Sex-Based Discrimination in Violation of Title VII**
**(Against Minhas)**

167. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

168. Pursuant to Section 2000e-2(a), it shall be an unlawful employment practice for an employer - (1) to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex.

169. Pursuant to Section 2000e-2(m), an unlawful employment practice is established when the complaining party demonstrates that sex was a motivating factor for any employment practice, even though other factors also motivated the practice.

170. Minhas, through its agents and employees, unlawfully discriminated against Plaintiff with respect to her compensation, terms, conditions, and privileges of her employment because of her sex.

171. As a direct and proximate result of Minhas' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### SECOND CLAIM FOR RELIEF
*Quid Pro Quo Harassment* **In Violation of Title VII**
**(Against Minhas)**

172. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

173. Pursuant to Section 2000e-2(a), it shall be an unlawful employment practice for an employer - (1) to … discriminate against any individual with respect to his … terms, conditions, or privileges of employment, because of such individual's sex.

174. Pursuant to 29 CFR 1604.11, unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitutes sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

175. Minhas, through its agents and employees, unlawfully subjected Plaintiff to *Quid Pro Quo* harassment. Alex Gan's conduct is equally unlawful under Title VII whether the employee submits or not.

176. As a direct and proximate result of Minhas' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### THIRD CLAIM FOR RELIEF
**Hostile Work Environment in Violation of Title VII**
**(Against Minhas)**

177. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

178. Pursuant to Section 2000e-2(a), it shall be an unlawful employment practice for an employer - (1) to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex.

179. The Supreme Court has held that Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to later the conditions of the victim's employment and create an abusive working environment.

180. Minhas, through its agents and employees, unlawfully subjected Plaintiff to hostile work environment.

181. As a direct and proximate result of Minhas' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### FOURTH CLAIM FOR RELIEF
**Retaliation in Violation of Title VII**
**(Against Minhas)**

182. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

183. Pursuant to Section 2000e-3(a), it shall be an unlawful employment practice for an employer to discriminate against any individual, because he has opposed any practice made an unlawful employment practice under Title VII.

184. Minhas, through its agents and employees, unlawfully retaliated against Shekh for opposing Alex Gan's unlawful employment practices by terminating her employment from Minhas and interfering with her subsequent employment.

185. As a direct and proximate result of Minhas' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**Sex-Based Discrimination in Violation of NYSHRL**
**(Against All Defendants)**

186. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

187. Pursuant to § 296 (1) (a) of NYSHRL, it shall be an unlawful discriminatory practice, for an employer, because of an individual's sex, to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

188. Individual liability under § 296(1) lies only where a defendant actually participates in the conduct giving rise to discrimination, and is limited to individuals with ownership interest or supervisors, who themselves have the authority to hire and fire employees.

189. The Defendants unlawfully discriminated against Plaintiff in compensation, terms, conditions and privileges of her employment because of her sex.

190. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SIXTH CLAIM FOR RELIEF
### Hostile Work Environment in Violation of NYSHRL
### (Against All Defendants)

191. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

192. Pursuant to § 296 (1) (h) of NYSHRL, it shall be an unlawful discriminatory practice, for an employer to subject any individual to harassment because of an individual's sex or because the individual has opposed any practices forbidden by NYSHRL, regardless of whether such harassment would be considered severe or pervasive. Such harassment is an unlawful discriminatory practice when its subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. The fact that such individual did not make a complaint about the harassment to such employer shall not be determinative of whether such employer will be liable.

193. The Defendants unlawfully subjected Plaintiff to sexual harassment, which rises above level what a reasonable victim of discrimination with the same protected characteristic would consider petty slights or trivial inconveniences.

194. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SEVENTH CLAIM FOR RELIEF
### Retaliation in Violation of NYSHRL
### (Against All Defendants)

195. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

196. Pursuant to § 296 (1) (e) of NYSHRL, it shall be an unlawful discriminatory practice for any employer to discharge or otherwise discriminate against any person because he or she has opposed any practices forbidden by NYSHRL.

197. Pursuant to § 296 (7) of NYSHRL, it shall be an unlawful discriminatory practice for any person engaged in any activity to which NYSHRL applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden by NYSHRL.

198. The Defendants engaged in an unlawful discriminatory practice by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, terminating Plaintiff, interfering with her subsequent employment, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

199. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### EIGHTH CLAIM FOR RELIEF
**Discrimination in Violation of NYCHRL**
**(Against All Defendants)**

200. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

201. Pursuant to § 8-107 (1) (a) (2) and (3) of NYCHRL, it shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived gender to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

202. The Defendants unlawfully discriminated against Plaintiff in compensation, terms, conditions and privileges of her employment on the basis of her sex.

203. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### NINTH CLAIM FOR RELIEF
**Hostile Work Environment in Violation of NYCHRL**
**(Against All Defendants)**

204. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

205. Pursuant to § 8-107 (1) (a) (3) of NYCHRL, it shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived gender to discriminate against such person in compensation or in terms, conditions or privileges of employment.

206. The Defendants unlawfully discriminated against Plaintiff  in terms, conditions and privileges of her employment by subjecting her to *quid pro quo* sexual harassment and hostile work environment.

207. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### TENTH CLAIM FOR RELIEF
**Retaliation in Violation of NYCHRL**
**(Against All Defendants)**

208. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

209. Pursuant to NYCHRL §8-107(1)(e), it shall be an unlawful discriminatory practice for any person engaged in any activity to which NYCHRL applies to retaliate or discriminate in any manner against any person because such person has opposed any practice forbidden by NYCHRL.

210. The retaliation or discrimination complained of need not result in an ultimate action with respect to employment, or in any materially adverse change in the terms and conditions of employment, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

211. The Defendants unlawfully retaliated against Plaintiff for opposing the Defendants' discriminatory practices.

212. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### ELEVENTH CLAIM FOR RELIEF
**Differential in Rate of Pay Because of Sex in Violation of NYLL**
**(Against Minhas)**

213. Plaintiff Shekh repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

214. Pursuant to NYLL §194, no employee shall be paid a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions.

215. Pursuant to NYLL §198 (1-a), in an action upon a wage claim by an employee, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages up to three hundred percent of the total amount of the wages found to be due for a willful violation of Section 194.

216. Minhas unlawfully paid Plaintiff at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work.

217. As a direct and proximate result of Minhas' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## <u>INJURY AND DAMAGES</u>

218. As a result of the acts and conduct complained of herein, Plaintiff Shekh has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by federal and state common law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e *et seq.,* New York State Executive Law §296 et. seq. and the New York City Administrative Code Title 8, §8-107 et. seq.; and that the Defendants harassed, discriminated against, and retaliated against Plaintiff Shekh on the basis of her sex/gender and awarding Plaintiff a recovery for damages sustained;

B. Awarding damages to the Plaintiff Shekh, retroactive to the date any such damages were initially incurred, for all lost wages and benefits resulting from Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

C. Awarding Plaintiff Shekh compensatory damages for mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

D. Directing Defendants to place Plaintiff Shekh in the position she would have occupied but for defendants' discriminatory and retaliatory and unlawful conduct and making the Plaintiff Shekh whole for all earnings and other benefits she would have received but for Defendants' discriminatory and retaliatory treatment, including, but not limited to, title, seniority status, wages and other lost benefits;

E. Awarding Plaintiff Shekh punitive damages;

F. Awarding Plaintiff Shekh attorney's fees, costs and expenses; and

G.   Awarding Plaintiff Shekh such other and further relief as the Court may deem equitable,

just and proper to remedy the Defendants' unlawful employment practices.


Dated: June 18, 2021
         New York, New York

Respectfully submitted,

**AKIN LAW GROUP PLLC**

*/s/ Olena Tatura*

_____
Olena Tatura, Esq.
45 Broadway, Suite 1420
New York, NY 10006
Telephone: (212) 825-1400
Olena@akinlaws.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
YULIYA SHEKH,                                                              Civil Action No.:


                              Plaintiff,


              v.


MINHAS CONSTRUCTION CORP.,
and ALEKSANDR A. GAN a/k/a ALEX GAN


                              Defendants.
--------------------------------------------------------------X

---

**COMPLAINT**

---

**AKIN LAW GROUP PLLC**
**45 Broadway, Suite 1420**
**New York, New York 10006**
**Tel: (212) 825-1400**
**Fax: (212) 825-1440**
***Attorneys for Plaintiff***